IN THE

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

JASON LEOPOLD,

*Plaintiff-Appellant,*

v.

J. THOMAS MANGER, *et al.*,

*Defendants-Appellees*

_____

REPLY BRIEF OF APPELLANT JASON LEOPOLD

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

_____

JEFFREY LIGHT, D.C. BAR #485360
Law Office of Jeffrey L. Light
1629 K Street, N.W.
Suite 300
Washington, DC 20006
(202) 277-6213
Jeffrey@LawOfficeOfJeffreyLight.com

Dated: August 29, 2023                    *Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES ................................................ iii

GLOSSARY OF ABBREVIATIONS ................................... ix

SUMMARY OF ARGUMENT ............................................1

ARGUMENT ......................................................................3

I.    Sovereign immunity does not bar Mr. Leopold's claims......................3

  A.   Under this Court's precedent, the application of the *Larson-Dugan* exception to sovereign immunity merges with the merits of Mr. Leopold's claims. ................................3

  B.   Even if this Court were free to reevaluate the question, it should again hold that the *Larson-Dugan* exception merges with the merits of a common law right of access claim. ......................6

    i.  Supreme Court precedent does not foreclose the applicability of the *Larson-Dugan* exception to cases in which actions by an officer are beyond their common law duties. ..............................6

   ii.  In withholding records from Mr. Leopold, the Chief of the United States Capitol Police is acting in excess of his statutory authority. ................................9

  C.   The applicability of the *Larson-Dugan* exception to sovereign immunity merges with the merits of Mr. Leopold's statutory claim. ..................................12

II.    The common law right of access applies to legislative branch records. ................................13

III.   Mr. Leopold's common law claims should not be rejected on the grounds that the requested documents are preliminary or that non-security information may be withheld. ..........................16

  A.   The United States Capitol Police Directives are not preliminary materials. ................................16

**B.** The government may not withhold information as "security information" unless the information falls within the statutory definition of that term. ...........................................................17

**IV.** Judicial review is available as to the government's determinations of what information constitutes security information. .............................................................................19

**V.** Mr. Leopold has a right of access to the United States Capitol Police Office of Inspector General records required by statute to be published. ........................................................20

**A.** The most natural reading of 2 U.S.C. § 1901(c)(1) requires the United States Capitol Police Inspector General to make the requested records available to the public. .............................20

**B.** Comments by a House subcommittee in a subsequent Congress do not support a different result. ........................................24

**VI.** Mandamus relief is available in this case. ........................................24

**CONCLUSION** .............................................................................27

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

**CERTIFICATE OF SERVICE**

# TABLE OF AUTHORITIES

**Cases**

*13th Reg'l Corp. v. Dep't of the Interior*,
  654 F.2d 758 (D.C. Cir. 1980)..............................................................24

*\*Ass'n of Battery Recyclers v. EPA*,
  716 F.3d 667 (D.C. Cir. 2013)..............................................................5

*Bennett v. Spear*,
  520 U.S. 154 (1997).............................................................................16

*Bouve v. Twentieth Century-Fox Film Corp.*,
  122 F.2d 51 (D.C. Cir. 1941)...............................................................25

*Bowsher v. Synar*,
  478 U.S. 714 (1986).............................................................................25

*\*Chamber of Commerce of the United States v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996)....................................................... 12, 19

*Cheney v. United States Dist. Court*,
  542 U.S. 367 (2004).............................................................................15

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
  467 U.S. 837 (1984).............................................................................18

*Citizens for Responsibility & Ethics in v. United States DOJ*,
  846 F.3d 1235 (D.C. Cir. 2017).............................................................6

*Clement v. Graham*,
  78 Vt. 290, 63 A. 146 (1906)................................................................14

*Cobell v. Norton*,
  428 F.3d 1070 (D.C. Cir. 2005)............................................................24

*Commissioner v. Simmons*,
  646 F.3d 6 (D.C. Cir. 2011).................................................................25

*Crowe & Dunlevy, P.C. v. Stidham*,
  640 F.3d 1140 (10th Cir. 2011) ............................................................8

Ctr. for Nat'l Sec. Studies v. United States DOJ,
  331 F.3d 918 (D.C. Cir. 2003) .............................................................13

*Dugan v. Rank*,
  372 U.S. 609 (1963) ................................................................. 3, 6, 9

*E. Ky. Welfare Rights Org. v. Simon*,
  506 F.2d 1278 (D.C. Cir. 1974),
  *rev'd on other grounds*, 426 U.S. 26 (1976) ......................................11

*Esquire, Inc. v. Ringer*,
  591 F.2d 796 (D.C. Cir. 1978) .............................................................25

Ex parte Young,
  209 U.S. 123 (1908) ................................................................................8

*Fed. Express Corp. v. United States DOC*,
  39 F.4th 756 (D.C. Cir. 2022) .............................................................19

*In re Cheney*,
  406 F.3d 723 (D.C. Cir. 2005) (*en banc*)...........................................24

*Jam v. Int'l Fin. Corp.*,
  139 S. Ct. 759 (2019) ........................................................... 20, 21, 22

Johnson v. DeSoto Cty. Bd. of Comm'rs,
  72 F.3d 1556 (11th Cir. 1996) .................................................................6

*Joint Anti-Fascist Refugee Comm. v. McGrath*,
  341 U.S. 123 (1951).................................................................................7

Judicial Watch, Inc. v. Schiff,
  998 F.3d 989 (D.C. Cir. 2021) .............................................................15

La. Pub. Serv. Com v. FCC,
  476 U.S. 355 (1986)...............................................................................10

*Larson v. Domestic & Foreign Commerce Corp.,
  337 U.S. 682 (1949) ................................................................. 3, 6, 7

*Littell v. Morton,
  445 F.2d 1207 (4th Cir. 1971) ...........................................9

*Lovitky v. Trump,
  949 F.3d 753 (D.C. Cir. 2020) ...........................................24

*Manhattan-Bronx Postal Union v. Gronouski,
  350 F.2d 451 (D.C. Cir. 1965) ...........................................8

Marbury v. Madison,
  5 U.S. (1 Cranch) 137 (1803) ...........................................3

*McCarl v. Cox,
  8 F.2d 669 (D.C. Cir. 1925) ...........................................25

*Mendez v. Poitevent,
  823 F.3d 326 (5th Cir. 2016) ...........................................5

Minn. State Bd. for Cmty. Colls. v. Knight,
  465 U.S. 271 (1984) ...........................................5

Miss. Power & Light Co. v. Mississippi,
  487 U.S. 354 (1988) ...........................................19

*Nat'l Asso. of Postal Supervisors v. United States Postal Serv.,
  602 F.2d 420 (D.C. Cir. 1979) ...........................................11

Neustar, Inc. v. FCC,
  857 F.3d 886 (D.C. Cir. 2017) ...........................................18

*New York ex rel. New York State Office of Children & Family Servs.
  v. U.S. Dep't of Health & Human Servs.' Admin. For Children
  & Families,
  556 F.3d 90 (2nd Cir. 2009) ...........................................22

Nowack v. Auditor Gen.,
  243 Mich. 200, 219 N.W. 749 (1928)...........................................14

*Phila. Co. v. Stimson*,
   223 U.S. 605 (1912)...........................................................................8

*Pollack v. Hogan*,
   703 F.3d 117 (D.C. Cir. 2012)...........................................................7

*Powell v. McCormack*,
   395 U.S. 486 (1969).........................................................................26

*Ry. Labor Executives' Ass'n v. Nat'l Mediation Bd.*,
   29 F.3d 655 (D.C. Cir. 1994)...........................................................10

*Salt River Project Agric. Improvement & Power Dist. v. Lee*,
   672 F.3d 1176 (9th Cir. 2012)............................................................8

*State ex rel. Colscott v. King*,
   154 Ind. 621, 57 N.E. 535 (1900).....................................................13

*State ex rel. Ferry v. Williams,*
   41 N.J.L. 332 (1879).........................................................................13

*State ex rel. Youmans v. Owens*,
   28 Wis. 2d 672, 137 N.W.2d 470 (1965)...........................................14

*Swan v. Clinton*,
   100 F.3d 973 (D.C. Cir. 1996)............................................... 11, 12, 26

*Tindal v. Wesley*,
   167 U.S. 204 (1897)...........................................................................8

*Undisclosed LLC v. State*,
   807 S.E.2d 393 (Ga. 2017) ...............................................................14

*United States v. Anderson*,
   583 F.3d 504 (7th Cir. 2009) ............................................................22

*United States v. Head*,
   552 F.3d 640 (7th Cir. 2009) ............................................................22

*United States v. Ho*,
   984 F.3d 191 (2nd Cir. 2020) ...........................................................22

*United States v. Johnson*,
   383 U.S. 169 (1966)........................................................15

*United States v. Mitchell*,
   551 F.2d 1252 (D.C. Cir. 1976)........................................14

\*Wash. Legal Found. v. United States Sentencing Comm'n,*
   89 F.3d 897 (D.C. Cir. 1996) ("*WLF II*")................................ 4, 6, 10, 15, 16, 17

\*We the People Found., Inc. v. United States*,
   485 F.3d 140 (D.C. Cir. 2007)..........................................5

\* cases primarily relied upon


**Statutes**

2 U.S.C. § 1901(c)(1).......................................................... 20, 21

2 U.S.C. § 1921a..............................................................9

2 U.S.C. § 1979............................................................... 17, 18

2 U.S.C. § 1979(a) ............................................................18

2 U.S.C. § 1979(b) ........................................................... 9, 17, 19, 24, 25

2 U.S.C. § 1979(d) ............................................................10

2 U.S.C. §§ 1961-1982 ........................................................9

28 U.S.C. § 1361 .............................................................24

49 U.S.C. § 114(r)............................................................17

Inspector General Act of 1978 ...............................................24

**Constitutional Provisions**

U.S. Const. Art. I, § 5, Cl. 3.........................................................................15

# GLOSSARY OF ABBREVIATIONS

APA        Administrative Procedure Act

FOIA      Freedom of Information Act

# SUMMARY OF ARGUMENT

The government argues that Mr. Leopold is not entitled to relief because sovereign immunity bars his claims, judicial review is not available, and subject matter jurisdiction does not lie. None of these arguments justify affirming the district court's entry of summary judgment for the government.

Sovereign immunity does not bar Mr. Leopold's claims because of the *Larson-Dugan* exception to sovereign immunity. Binding precedent of this Court establishes the applicability of the *Larson-Dugan* exception to sovereign immunity for claims of a common law right of access to records of all three branches of government. The government's attempt to cast the prior holdings of this Court as mere *dicta* is unavailing because this Court has rejected, implicitly or explicitly, the arguments being raised by the government in this case. Further, the government's claim that this Court's precedent compels a different result is based on a misreading of the Supreme Court's holdings. The Supreme Court has not foreclosed the possibility that the *Larson-Dugan* exception to sovereign immunity may arise from a government officer's duty under federal common law. Moreover, even if the *Larson-Dugan* exception to sovereign immunity could only be predicated on a government official's actions in excess of their statutory duty, this case involves precisely such a situation.

Defendants-Appellees possess statutory authority to withhold information that they would otherwise be under a duty to disclose only if the information constitutes "security information" as that term is defined by statute. Their statutory authority does not extend to withholding entire documents which include both security information and non-security information where the latter can be segregated and released. Therefore, their actions in withholding non-security information are *ultra vires* their statutory authority.

Judicial review of Mr. Leopold's claims is available because he meets the three requirements for nonstatutory review. It is undisputed that there is no explicit statutory prohibition on judicial review of claims such as Mr. Leopold's. It is also undisputed that there is no alternative procedure for review. The third prong is met because, as with the *Larson-Dugan* exception, the government officials acted in excess of their authority.

Mr. Leopold has also asserted a valid statutory cause of action for certain reports of the Inspector General of the United States Capitol Police because the natural reading of the statute creating that position incorporates one of the disclosure provisions of the Inspector General Act on a continuing basis.

Finally, subject matter jurisdiction exists over Mr. Leopold's claims for relief, which are in the nature of mandamus, because once the relevant statutes are

interpreted by this Court, the Defendants-Appellees owe him a clear and mandatory duty of disclosure.

## ARGUMENT

I.   **Sovereign immunity does not bar Mr. Leopold's claims.**

   A. **Under this Court's precedent, the application of the *Larson-Dugan* exception to sovereign immunity merges with the merits of Mr. Leopold's claims.**

As far back as *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 171 (1803), the Supreme Court held, "If one of the heads of departments commits any illegal act, under the color of his office, by which an individual sustains an injury, it cannot be pretended that his office alone exempts him from being sued in the ordinary mode of proceeding, and being compelled to obey the judgment of the law." In the seminal case of *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949), the Supreme Court explained that in determining whether sovereign immunity is implicated in a suit against a federal officer, "the crucial question is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign." Subsequently, the Supreme Court reaffirmed *Larson*, holding that an exception to the general rule of sovereign immunity exists where "the officer's action can be made the basis of a suit for specific relief against the officer as an individual[.]" *Dugan v. Rank*, 372 U.S. 609, 622 (1963) (internal quotation marks omitted).

This Court has held that "[w]hether the *Larson-Dugan* exception applies to this case depends upon whether the Government has a duty to the plaintiff, *viz.* to allow it access to certain government records." *Wash. Legal Found. v. United States Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996) ("*WLF II*"). The government contends that *WLF II* is not binding on the issue of whether the *Larson-Dugan* exception applies here, but its explanation is not persuasive.

First, the government posits that in *WLF II*, "'the only basis upon which [the Government] resist[ed] application' of the exception was that the common law did not impose such a duty." (Appellee Br. 19) (alteration in Appellee's brief). This Court's decision in *WLF II* is therefore distinguishable, according to the government, because application of the *Larson-Dugan* exception is now resisted on a different basis. The theory that the government relies on to resist application of the *Larson-Dugan* exception now is that the exception can *never* be predicated on common law. However, this is simply another way of "resist[ing] application of the exception" on the grounds that "the common law did not impose such a duty." (Appellee Br. 19.) The government does not now resist application of the exception on distinct grounds (*e.g.*, that the Administrative Procedure Act (APA) abrogates the *Larson-Dugan* exception or that another forum for relief is available). While the government may now wish that it had developed its arguments better in *WLF II*, that is not a cause to ignore binding case law. *See*

*Ass'n of Battery Recyclers v. EPA*, 716 F.3d 667, 673 (D.C. Cir. 2013) ("This argument, although far better developed than the identical claim in [a previous case], is barred by that decision"); *Mendez v. Poitevent*, 823 F.3d 326, 335 (5th Cir. 2016) (rejecting "the proposition that the rule of orderliness may be skirted where a party dreams up new arguments that were not presented to a prior panel.")

Illustrative of this principle is this Court's decision in *We the People Found., Inc. v. United States*, 485 F.3d 140, 144 (D.C. Cir. 2007). There, the plaintiffs argued that a Supreme Court case, *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271 (1984), "overlooked important historical information regarding the right to petition." *Id.* Although the plaintiffs were correct that the Supreme Court's opinion did "not refer to the historical evidence and . . . the historical argument was not presented to the Supreme Court," *We the People Found.*, 485 F.3d at 145 (Rogers, J., concurring), both the majority and concurring opinions found *Knight* to be binding precedent.

Next, the government argues that in *WLF II*, this "Court did not address the part of *Larson* that answers th[e] question" of "whether a duty based on judicially fashioned common law should be treated the same as a duty imposed by statute[.]" (Appellee Br. 19.) Although this Court did not elaborate at length on the issue, it concluded that a duty under the common law *could* be treated the same as a duty imposed by statute. It follows from this holding, *a foriori*, that this Court rejected

the premise that the common law could *never* be treated the same as a statute for purposes of the *Larson-Dugan* doctrine. Even if this Court's rejection of the government's argument could be said to be merely implicit in *WLF II*, that aspect of this Court's holding remains binding. *Citizens for Responsibility & Ethics in v. United States DOJ*, 846 F.3d 1235, 1243 (D.C. Cir. 2017) ("[The] court necessarily—albeit implicitly—rejected this argument, and we are bound not only [by] the result of a prior opinion but also [by] those portions of the opinion necessary to that result") (internal quotation marks omitted, second and third alterations in original); *Johnson v. DeSoto Cty. Bd. of Comm'rs*, 72 F.3d 1556, 1561 (11th Cir. 1996) (implicit holding of panel is binding on future panels).

### B. Even if this Court were free to reevaluate the question, it should again hold that the *Larson-Dugan* exception merges with the merits of a common law right of access claim.

#### i. Supreme Court precedent does not foreclose the applicability of the *Larson-Dugan* exception to cases in which actions by an officer are beyond their common law duties.

Although the Supreme Court's decision in *Larson* referred to an officer acting in "conflict with the terms of his valid *statutory* authority," 337 U.S. at 695 (emphasis added), and its decision in *Dugan* referred to federal officials acting "beyond their *statutory* powers," 372 U.S. at 621 (emphasis added), those case presented situations in which the officials' only claimed basis for their authority

was a statute. In a case where a federal official claimed to possess authority based on a *non-statutory* source, the Supreme Court applied the rule of *Larson* to the limitation imposed by the non-statutory source of authority. *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 140 (1951) ("The same is true here, where the acts complained of are beyond the officer's authority under the Executive Order.")[1] This Court has likewise rejected an attempt by the government to read the reference to "statutory" authority in *Larson* and *Dugan* as barring application of the *Larson-Dugan* exception to duties imposed by non-statutory sources. *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) ("Although the district court suggested and the defendants argue that the *Larson-Dugan* exception is limited to cases alleging that defendants have acted beyond *statutory* authority, there is no basis for such a limitation in the logic of the *ultra vires* rationale for the exception.") (emphasis in original). Here, the government likewise fails to offer a logical basis for limiting the *ultra vires* rationale of the *Larson-Dugan* exception to statutory authority.

Instead of focusing on the source of the federal official's authority, courts in "[m]any cases, both before and since *Larson v. Domestic and Foreign Commerce*

_____

[1] The quoted language is from the lead opinion of the Supreme Court, which was signed by two justices. The four concurring justices agreed that "the methods employed by the Attorney General exceed his authority under Executive Order No. 9835" and that the dismissal of the case should be reversed. *Id.* at 143.

*Corp.*, 337 U.S. 682 (1949), have recognized that the *crucial question* is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign. 337 U.S. at 687." *Manhattan-Bronx Postal Union v. Gronouski*, 350 F.2d 451, 454 (D.C. Cir. 1965) (internal quotation marks omitted, emphasis added). The answer to this "crucial question" turns on whether "the judgment sought would require the payment of public funds or entail the transfer of public lands, or if it would interfere with the public administration by either restraining the Government from acting or requiring it to act." *Id.* These considerations apply equally to relief sought pursuant to the common law and relief sought pursuant to a statute.[2] In this case, application of the *Larson-Dugan* doctrine is appropriate

---

[2] In the analogous context of actions brought pursuant to the line of cases originating with *Ex parte Young*, 209 U.S. 123 (1908), the two federal courts of appeals to have considered the question have held that a suit against a government official is not a suit against the sovereign even where the claimed duty is predicated on the common law. *See Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1182 (9th Cir. 2012) ("*Ex parte Young* is not limited to claims that officials are violating the federal Constitution or federal statute; it applies to federal common law as well"); *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1155 (10th Cir. 2011). Indeed, in *Ex parte Young* itself, the duties of the state's Attorney General were "created partly by statute and exist partly as at common law." 209 U.S. at 161. Cases involving application of the *Ex parte Young* doctrine implicate state or tribal sovereign immunity under the Eleventh amendment, rather than federal sovereign immunity, but are based on many of the same principles as federal sovereign immunity and should therefore be considered persuasive authority. *Tindal v. Wesley*, 167 U.S. 204, 213 (1897) ("It cannot be doubted that the question whether a particular suit is one against the State, within the meaning of the Constitution, must depend upon the same principles that determine whether a particular suit is one against the United

because the judgment sought would not require the payment of public funds, the transfer of public lands, or interfere with the public administration. Mr. Leopold's common law claims to obtain copies of documents therefore stand in sharp contrast to a case such as *Dugan*, which involved an attempt to enjoin the government from taking action on a massive federal project to divert water from a dam. 372 U.S. at 610. *See also Littell v. Morton*, 445 F.2d 1207, 1214 (4th Cir. 1971) (sovereign immunity did not bar suit because "[t]his is not a case where an important government project is halted pending litigation[.]")

> ii.  **In withholding records from Mr. Leopold, the Chief of the United States Capitol Police is acting in excess of his statutory authority.**

The authority delegated by Congress to the United States Capitol Police is set forth in 2 U.S.C. §§ 1961-1982. The provisions of Title 2, Chapter 29 delegating authority specifically to the Chief of the United States Capitol Police largely relate to personnel matters, *see e.g.*, 2 U.S.C. § 1921a, but for the sake of argument it will be assumed that the authority of the Chief of the United States Capitol Police is coextensive with the authority of the United States Capitol Police unless otherwise specified by statute.

The statutory authority that permits the United States Capitol Police to withhold information to which an individual would otherwise be entitled is 2 U.S.C. §

---

States"); *Phila. Co. v. Stimson*, 223 U.S. 605, 621 (1912) (applying *Ex parte Young* to federal official).

1979(b). That provision permits the withholding "[n]othwithstanding any other provision of law" of "security information[.]" Its grant of authority to withhold information "[n]othwithstanding any other provision of law" does not extend beyond "security information." Therefore if Mr. Leopold is entitled to the requested records under another provision of law (*e.g.*, federal common law), the Defendants-Appellees lack delegated authority to withhold the information under 2 U.S.C. § 1979(b) unless the information is security information as defined by the statute.[3] The United States Capitol Police, like any other government agency, do not possess plenary authority to act beyond the power delegated by Congress. *See La. Pub. Serv. Com v. FCC*, 476 U.S. 355, 374 (1986); *Ry. Labor Executives' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 670 (D.C. Cir. 1994).

It is conceded by the government that 36 of the Directives at issue in this case contain no security information at all. (Appellee Br. 41.) If Mr. Leopold is entitled to these records, the Chief of the United States Capitol Police is acting *ultra vires* his statutory authority by withholding them. The question of sovereign immunity

---

[3] Although Congress delegated authority to the Capitol Police Board to "promulgate regulations to carry out this section, with the approval of the Committee on Rules and Administration of the Senate and the Committee on House Administration of the House of Representatives," 2 U.S.C. § 1979(d), the government does not assert that it has promulgated any regulations under this provision relevant to the documents at issue here.

therefore merges with the merits in this case, just as it did in *WLF II*, 89 F.3d at 900.

For the documents which the government claims contain security information, the withholding of the *non-security information portions* of the documents is an *ultra vires* action not authorized by statute. While not every claim that an official misinterpreted a statute qualifies as *ultra vires* action, the issue of the extent of the authority delegated by the statute is the type of claim that falls within the *Larson-Dugan* exception to sovereign immunity. *E. Ky. Welfare Rights Org. v. Simon*, 506 F.2d 1278, 1283 (D.C. Cir. 1974), *rev'd on other grounds*, 426 U.S. 26 (1976); *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) ("If Swan's removal violated the NCUA statute, the *Larson-Dugan* exception would be triggered and hence no waiver of sovereign immunity is required here"); *Nat'l Asso. of Postal Supervisors v. United States Postal Serv.*, 602 F.2d 420, 432 (D.C. Cir. 1979) ("[I]t involves a straightforward question of statutory interpretation. The judicial role is to determine the extent of the agency's delegated authority and then determine whether the agency has acted within that authority.") Thus, the question of whether the government officials have acted *ultra vires* in withholding the documents designated as containing security information merges with the merits of Mr. Leopold's interpretation of the statute.

### C. The applicability of the *Larson-Dugan* exception to sovereign immunity merges with the merits of Mr. Leopold's statutory claim.

The government argues that because the United States Capitol Police Board ordered the Inspector General not to disclose the requested information, the Inspector General acted within his authority by following this order.[4] (Appellee Br. 21.) It follows, according to the government, that any fault lies with the United States Capitol Police Board, which is not a party to this proceeding. (Appellee Br. 22.) Regardless of the identity of the party at fault, the Inspector General is the proper party defendant because he can provide the relief sought by Mr. Leopold. *See Swan*, 100 F.3d at 979. Even if the Inspector General was merely obeying the command of the Capitol Police Board, this Court has the power to compel him to comply with his legal duty to act. *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996). Further, even if this Court concludes that the United States Capitol Police Board is a necessary party, summary judgment for the government is not proper on this basis because the Amended

---

[4] As the government correctly notes, the standard for applying the *Larson-Dugan* doctrine is the same for statutory claims as it is for common law claims. (Appellee Br. 23 n.5.) Therefore, the question of whether sovereign immunity bars Mr. Leopold's statutory claim of access to Inspector General reports merges with the merits of the claim.

Complaint can be construed as seeking relief against all appropriate parties (JA-10). *Swan*, 100 F.3d at 979-80.

## II. The common law right of access applies to legislative branch records.

As an initial matter, the government's argument that the common law right of access does not extend to legislative branch records is foreclosed by this Court's precedent. "This Court has held that the common law right of access extends beyond judicial records to the public records of all three branches of government, and we are bound by our precedent." *Ctr. for Nat'l Sec. Studies v. United States DOJ*, 331 F.3d 918, 936 (D.C. Cir. 2003) (internal quotation marks and citation omitted). However, even if a panel of this Court were free to revisit the issue, it should continue to hold that the common law right of access applies to legislative branch records.

The government asserts that at common law, judicial records differed from non-judicial records in that non-judicial records required a special need for the document. (Appellee Br. 25.) It is not clear why this distinction should matter, but at any rate, the common law as it developed in America in the 20th century abandoned the requirement of a special need for the documents, which had been present at English common law. *See Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978). The Supreme Court in *Nixon* noted several cases in which the justification for a writ compelling disclosure of non-judicial records was simply a

"citizen's desire to keep a watchful eyes on the workings of public agencies" or "a newspaper publisher's intention to publish information concerning the operation of government." *Id.* at 598, *citing State ex rel. Colscott v. King*, 154 Ind. 621, 57 N.E. 535 (1900) (records of county auditor's office); *State ex rel. Ferry v. Williams,* 41 N.J.L. 332 (1879) (letters of recommendation submitted to the collector of taxes in support of an application for a license to sell ale); *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 137 N.W.2d 470 (1965) (police report in possession of the Mayor). Similarly, this Court has cited several cases involving non-judicial records for the proposition that the common law "granted all taxpayers and citizens access to public records." *United States v. Mitchell*, 551 F.2d 1252, 1257 n.17 (D.C. Cir. 1976), *citing Nowack v. Auditor Gen.*, 243 Mich. 200, 219 N.W. 749 (1928) (records of the state auditor's office); *Fagan v. State Bd. of Assessors*, 80 N.J.L. 516, 77 A. 1023 (1910) (records and returns of board of assessors); *State ex rel. Wellford v. Williams*, 110 Tenn. 549, 75 S.W. 948 (1903) (corporate books in possession of the Mayor); *Clement v. Graham*, 78 Vt. 290, 63 A. 146 (1906) (vouchers in the possession of the state Auditor of Accounts). The cases cited by the government for the contrary position, *McBurney v. Young*, 569 U.S. 221, 233 (2013) and *Undisclosed LLC v. State*, 807 S.E.2d 393, 397 n.4 (Ga. 2017), both describe historical practice in England and in the United States prior to the 20th century.

The government further raises concerns about the separation of powers implications that it claims would arise from recognizing a common law right of access to legislative branch records. However, any separation of powers concerns are already adequately addressed by the immunity granted under the Speech or Debate Clause, which applies to suits under the common law right of access for documents relating to "legislative acts." *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 991-93 (D.C. Cir. 2021). *See United States v. Johnson*, 383 U.S. 169, 181 (1966) (noting that the Speech or Debate Clause was born of a desire to "prevent . . . accountability before a possibly hostile judiciary.") Further protection against judicial overreach is provided by the strict standards for mandamus-type relief to issue against coordinate branches of government, *Cheney v. United States Dist. Court*, 542 U.S. 367, 381 (2004), and the Journal Clause, which permits Congress to determine which parts of its proceedings should be kept secret. U.S. Const. Art. I, § 5, Cl. 3. Therefore, it is not necessary to impose a blanket exemption to the common law right of access for all legislative branch records based on separation of powers concerns because the subset of legislative branch records which implicate separation of powers concerns will already be excluded by other legal doctrines.

**III.  Mr. Leopold's common law claims should not be rejected on the grounds that the requested documents are preliminary or that non-security information may be withheld.**

**A. The United States Capitol Police Directives are not preliminary materials.**

The government analogizes the United States Capitol Police Directives to two examples of records that this Court in *WLF II* considered outside the scope of the common law right of access– "the report of a blood test provided in support of an application for a marriage license" and "the job application of a would be government employee[.]" (Appellee Br. 44.) These examples differ from the Directives because the former are created by third parties for their own purposes and not by the government "for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance." *Id.* at 905. Indeed, a blood test submitted in support of a marriage license and a job application have no legal significance at all because they do not bind the agency or third parties.

The government resists the conclusion that the Directives have legal significance by arguing that they affect third parties only on the contingency of future actions such as arrests and hiring of employees. (Appellee Br. 45.) However, an agency's final decision adopting a policy is no less an agency action than the application of that policy in a specific instance. By way of analogy, in the context

of the Administrative Procedure Act, a final agency action includes the setting of agency policy, provided that it is not a tentative or interlocutory policy and that it modifies the obligations of the agency as to future actions. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The Directives at issue here are neither tentative nor interlocutory because they do not need to be subjected to further review before becoming binding on the agency's employees, thereby modifying the legal obligations of the agency. Further, even if the adoption of the Directives was not properly categorized as an agency "action," the Directives are nevertheless public records because they were created to memorialize agency policy and therefore constitute "statement[s]" having legal significance. *WLF II*, 89 F.3d at 905.

### B. The government may not withhold information as "security information" unless the information falls within the statutory definition of that term.

The government further disputes the applicability of the common law right of access to many of the documents requested by Mr. Leopold on the grounds that disclosure is prohibited by 2 U.S.C. § 1979(b). Specifically, the government argues that the Inspector General documents are security information because the United States Capitol Police Board "designated" all Inspector General information as security information and that 65 of the 101 written directives at issue constitute security information because a document review team "determined" them to be security information. (Appellee Br. 36-39.) Unlike some other statutes, however, 2

U.S.C. § 1979 does not place independent legal significance on the "designation" or "determination" of the agency. In contrast, the Aviation and Transportation Security Act prohibits certain disclosures based on the "designation of information" as "sensitive security information" by the agency. 49 U.S.C. § 114(r). Had Congress intended to permit withholding of documents as security information on the *ipse dixit* of the United States Capitol Board or a review team, it clearly knew how to do so.

The government also argues that it is not required to disclose the non-security information portions of documents which contain at least some security information. However, the government fails to grapple with the plain language of 2 U.S.C. § 1979(b) which permits withholding of "information," not documents. While the government attempts to distinguish 2 U.S.C. § 1979 from the Freedom of Information Act (FOIA) on the grounds that only the latter has a segregability provision, it fails to address Mr. Leopold's point that FOIA required segregability even before it contained an explicit segregability provision.[5] (Appellant Br. 29 n.9.)

---

[5] No claim is made by the government that the Defendants-Appellees' interpretation of the statute is entitled to deference under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984). *See Neustar, Inc. v. FCC*, 857 F.3d 886, 894 (D.C. Cir. 2017) (*Chevron* deference is not jurisdictional and may be forfeited if not raised by the agency).

## IV. Judicial review is available as to the government's determinations of what information constitutes security information.

The government argues that judicial review is unavailable as to determinations by the United States Capitol Police Board of what constitutes security information under 2 U.S.C. § 1979(a) because the statute contains no provision for judicial review and the review provisions of the Administrative Procedure Act do not apply. It is well established in this jurisdiction, however, that where no statute provides for review of an agency action, "nonstatutory review" is available if three conditions are met: "(i) there is no express statutory preclusion of all judicial review; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory[.]" *Fed. Express Corp. v. United States DOC*, 39 F.4th 756, 763 (D.C. Cir. 2022). Because there can be little dispute that the first two requirements are met in this case, the question of whether nonstatutory review is available largely mirrors the question of whether the *Larson-Dugan* exception to sovereign immunity applies. *Chamber of Commerce of the United States*, 74 F.3d at 1329 ("[I]f the federal officer, against whom injunctive relief is sought, allegedly acted in excess of his legal authority, sovereign immunity does not bar a suit.")

The government officials acted in excess of their delegated powers by applying 2 U.S.C. § 1979(b) in an unauthorized manner. *Miss. Power & Light Co. v. Mississippi*, 487 U.S. 354, 381 (1988) ("To exceed authorized application is to exceed authority.") By applying 2 U.S.C. § 1979(b) to documents rather than to information, the defendants' actions were in excess of their authority and in violation of clear and mandatory statutory language.

**V.     Mr. Leopold has a right of access to the United States Capitol Police Office of Inspector General records required by statute to be published.**

    **A. The most natural reading of 2 U.S.C. § 1901(c)(1) requires the United States Capitol Police Inspector General to make the requested records available to the public.**

The government contends that the public posting requirement of the Inspector General Act does not apply to the United States Capitol Police Inspector General because the public posting requirement was not added to the Inspector General Act until after enactment of 2 U.S.C. § 1901(c)(1), the statutory provision creating the position of the United States Capitol Police Inspector General. (Appellee Br. 56.) In support of its position, the government relies on the "reference" canon of construction and statements in the legislative record of a subsequent Congress. (Appellee Br. 56.) The government's reliance on the reference canon is improper, however, because it misapprehends the Supreme Court's discussion of statutory construction in *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759 (2019).

At issue in *Jam* was the meaning of the term "same immunity" in the International Organizations Immunities Act (IOIA). *Id.* at 767. The Supreme Court began its analysis by determining how the term "same immunity" is "naturally understood." *Id.* at 768. The natural reading of the term "same immunity" is one that would "continuously link the immunity of international organizations to that of foreign governments, so as to ensure ongoing parity between the two." *Id.* Had Congress intended a different result, the Supreme Court reasoned, it could have said so. For example, "the statute could have specified that it was incorporating the law of foreign sovereign immunity as it existed on a particular date." *Id.* The Supreme Court then went on to note that its natural reading of "same immunity" as continuously linking the two entities' immunity "finds support in other statutes that use similar or identical language to place two groups on equal footing." *Id.* As the Supreme Court observed, "[s]uch 'same as' provisions dot the statute books, and federal and state courts commonly read them to mandate ongoing equal treatment of two groups or objects." *Id.*

This discussion of the natural reading of the term "same immunity" in the opinion was before any mention of the reference canon. Accordingly, in this case, the Court should first determine the natural reading of the terms "same duties and responsibilities" and "same terms and conditions" in the statute at issue, 2 U.S.C. § 1909(c)(1). As Mr. Leopold explained in his opening brief, there is no significant

difference between the language construed in *Jam* and the language that the Court must construe in this case. (Appellee Br. 52.) The government's brief does not address the natural reading of the terms at issue in this case, responding only that the statute at issue in *Jam* did not refer to a specific provision of another statute. (Appellee Br. 58.) However, that distinction is only relevant to the application of the reference canon in situations where it applies; it does not shed light on the natural reading of the statutory language at issue here and does not address the question of whether the reference canon should apply at all. The government makes no attempt to distinguish the language used in the statute at issue here from the "language that Congress typically uses to make one thing continuously equivalent to another." *Id.* at 769.

Only after determining the natural reading of the language in the statute at issue in *Jam* did the Supreme Court look to any "canon of statutory interpretation." *Id.* at 769. In employing the reference canon, the Supreme Court "confirmed" that its natural reading of the statute was correct. *Id.* The Supreme Court was therefore not presented with a situation in which the natural reading of the statute was at odds with the reference canon of construction. However, both before and after *Jam* was decided, federal courts of appeals have rejected attempts to use the reference canon to overcome the most natural reading of a statute. *United States v. Ho*, 984 F.3d 191, 203 (2nd Cir. 2020); *New York ex rel. New York State Office of Children &*

*Family Servs. v. U.S. Dep't of Health & Human Servs.' Admin. For Children &*

*Families*, 556 F.3d 90, 92 (2nd Cir. 2009); *United States v. Head*, 552 F.3d 640,

645-46 (7th Cir. 2009);[6] *United States v. Anderson*, 46 F.4th 1000, 1008 (9th Cir.

2022). The government attempts to differentiate *Ho*, *New York State Office of*

*Children & Families*, and *Head* based on specific differences in the language of

the statutes at issue in those cases and the language of the statutes at issue here

(Appellee Br. 59-60), but this argument misses the point. The cases cited by Mr.

Leopold stand for the proposition that resort to the reference canon will not prevail

over the most natural reading of a statute. The government neither challenges Mr.

Leopold's reading of these cases on that point nor cites any case law holding the

contrary.

Instead of pointing to ambiguity in the language of the statute that justifies

reliance on the reference canon in this case, the government argues that statutory

language is *always* ambiguous when a "referent [statute] is subsequently

amended[.]" (Appellee Br. 59.) This Court should reject the government's attempt

to turn the reference canon into an inflexible rule to be automatically applied any

time a referent statute is amended, without regard for the natural meaning of the

---

[6] The government contends that *Head* is "unpersuasive authority" because it was "restrict[ed] . . . significantly" by *United States v. Anderson*, 583 F.3d 504, 510 (7th Cir. 2009). In *Anderson*, however, the Seventh Circuit did not mention the reference canon, much less criticize the principle articulated in *Head* that the natural reading of a statute takes precedence over the reference canon.

words used by Congress in the referring statute. Such a rule would be inconsistent with the primacy of statutory text, and has been rejected by the Second, Seventh, and Ninth Circuits in the cases cited above.

### B. Comments by a House subcommittee in a subsequent Congress do not support a different result.

The government cites two recent reports from the House Subcommittee on Oversight which state that "the public does not have access to reports issued by the Capitol Police Office of Inspector General." (Appellee Br. 57.) While this statement accurately describes the present state of affairs, it does not suggest that the Subcommittee has a view as to whether this current situation is consistent with the legal requirement of § 4 of the Inspector General Act of 1978 that recommendations for corrective action be posted online. More importantly, ambiguous statements in a Subcommittee report from a later Congress than the one that enacted the relevant statutory provisions cannot supplant the plain language of the statute. *Cobell v. Norton*, 428 F.3d 1070, 1075 (D.C. Cir. 2005) ("[P]ost-enactment legislative history is not only oxymoronic but inherently entitled to little weight.")

### VI. Mandamus relief is available in this case.

Although the term "duty" as used in section 28 U.S.C. § 1361 "must be narrowly defined . . . [t]his does not mean that mandamus actions are ruled out whenever the statute allegedly creating the duty is ambiguous." *In re Cheney*, 406

F.3d 723, 729 (D.C. Cir. 2005) (*en banc*), *citing 13th Reg'l Corp. v. Dep't of the Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980). Instead, a court must interpret the statute which imposes a duty and if, "once interpreted," the statute "creates a peremptory obligation for the officer to act, a mandamus action will lie." *Lovitky v. Trump*, 949 F.3d 753, 760 (D.C. Cir. 2020). Although the government argues that there is ambiguity as to whether the public posting provision applies and, if it does, how it interacts with 2 U.S.C. § 1979(b), the language of both provisions is clear. However, even assuming for the sake of argument that there is some ambiguity as to the nature of the duty created by the statutes and the common law, the "obligation for the officer[s] to act" will be clear "once interpreted" by this Court.

The government also suggests in a footnote that the mandamus statute might not apply to officials in the legislative branch. This argument, mentioned in cursory form, is not sufficient to raise the issue. *See Commissioner v. Simmons*, 646 F.3d 6, 12 (D.C. Cir. 2011). However, if this Court decides to address the issue, it should hold that relief in the nature of mandamus is available as to officials in the legislative branch.

It has long been the practice in this circuit to approve the issuance of writs of mandamus to officials in the legislative branch. *McCarl v. Cox*, 8 F.2d 669, 670-71 (D.C. Cir. 1925) (mandamus issued against Comptroller General); *Bowsher v. Synar*, 478 U.S. 714, 731 (1986) (holding that the Comptroller General is an

officer of the legislative branch); *Bouve v. Twentieth Century-Fox Film Corp.*, 122 F.2d 51, 56 (D.C. Cir. 1941) (affirming issuance of mandamus against the Register of Copyrights); *Esquire, Inc. v. Ringer*, 591 F.2d 796, 807 (D.C. Cir. 1978) (Leventhal, J., concurring) (noting that the majority opinion reflects the premise that this Court has subject matter jurisdiction to issue a writ of mandamus to the Register of Copyrights).[7] Further, the Supreme Court has found that it has subject matter jurisdiction under the general federal question statute, 28 U.S.C. § 1331, to issue an injunction against officers of Congress. *Powell v. McCormack*, 395 U.S. 486, 515-16 (1969). Whether jurisdiction to issue such relief in this case arises under the mandamus statute or the general federal question statute is an academic point because "a request for an injunction based on the general federal question statute is essentially a request for a writ of mandamus in this context, where the injunction is sought to compel federal officials to perform a statutorily required ministerial duty." *Swan*, 100 F.3d at 976 n.1. Therefore, regardless of the statute that is applicable here, this Court possesses subject matter jurisdiction.

---

[7] While the Register of Copyrights is part of the legislative branch, some of the Register's functions are more akin to the functions of the executive branch. The same is true here. The United States Capitol Police perform the quintessentially executive function of enforcing laws passed by Congress.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order granting summary judgment to Defendants-Appellees based on a lack of subject matter jurisdiction and remand for further proceedings.

Respectfully Submitted,

 /s/ Jeffrey Light         _
Jeffrey L. Light
D.C. Bar #485360
1629 K St., NW
Suite 300
Washington, DC 20006
(202)277-6213
Jeffrey@LawOfficeOfJeffreyLight.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 6,492 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. R. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Office 365 in 14-point Times New Roman.

 /s/ Jeffrey Light
Jeffrey Light

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

_/s/ Jeffrey Light_____
Jeffrey Light